This is an appeal from an order of the Chancery Court of Jackson County, Mississippi, dismissing appellant Cumbest's bill of complaint.
The sole question presented is whether the personal property, which was the subject of the controversy, is of such peculiar, sentimental or unique value as to come within the exception to the general rule that a chancery court will not ordinarily decree specific performance of a contract involving personal property.
Cumbest's bill of complaint and exhibits attached thereto aver, among other things, that on May 19, 1976, Donald Ronnie Cumbest and Bedford Harris, respectively, contracted for the sale and purchase of certain hi-fi equipment via a bill of sale. An option agreement was also signed on the same date allowing Cumbest to repurchase the audio equipment on or before 5:00 p.m., Monday, June 7, 1976. The language of these two instruments is clear and unambiguous and both were signed and notarized.
The complainant averred that the transaction was intended to be a loan, in substance, and that the audio equipment was to serve as collateral. It also states that from early morning on Monday, June 7, 1976, until late that evening every effort humanly possible was made to pay the required amount of money to the defendant. The defendant purposely avoided meeting with him at various places during the day, thereby fraudulently and deliberately evading the receipt of the money as contracted for in The Option to Repurchase Agreement. In desperation the complainant deposited the required amount of money with the defendant's landlord on the evening of June 7, 1976, and approximately a week later initiated this lawsuit seeking equitable relief. Subsequently, the landlord, Mrs. Neuhaus, turned the money over to her attorney, Mr. Schroeder. Both of these parties have been joined as defendants in this lawsuit and the money paid into the registry of the court. *Page 296 
The amended complaint further averred that the complete assemblage of the audio equipment took several years for the appellant to acquire and because of the unique nature and irreplaceability of much of the equipment the court should assert jurisdiction of the case and grant such equitable relief as it deems appropriate. Finally, the complainant prays for the defendant to be enjoined against the disposition, sale or removal of the property and for the court to mandate specific performance of the contract to reconvey.
The chancellor allowed a hearing solely on the question of whether the property was of such sentimental value or so unique as to come within the exception to the general rule that the chancery court will not ordinarily decree specific performance of a contract involving personal property.
Cumbest was the only witness to testify at the proceeding. The property involved was a stereo system allegedly valued at $10,000. The system consisted of twenty separate parts accumulated over a period of fifteen years. There was testimony that Cumbest had acquired experience in stereophonic and recording equipment over the years by working in hi-fi stores in Oxford and Gulfport. He also did some recording of a professional nature. According to him, the items involved were a part of a recording studio which consisted of carefully matched parts, rather than a mere stereo set as contended by the defendant. The parts involved could not function alone, and could not be matched to just any standard stereo system. Cumbest testified that many of the integral parts of the system could no longer be replaced,e.g., the main reel to reel recorder; a stereo quadraphonic four channel logic decoder which, according to Cumbest, was originally on order for two years; a stereo three channel crossover preamplifier with base boost and turn over frequency control; some speaker components, and the particular diamond needle in the turntable system. Other equipment was personally designed and built by Cumbest himself. He testified that he purchased the parts and assembled the speakers to accommodate his particular system, and that the cabinets were designed and handmade by him after extensive study and research to meet the needs of his particular system.
 I designed and built each one of the [7] speakers myself. I ordered each part and component and especially ordered the cross-over preamplifier and there isn't another one like it, and the speakers I built.
In explaining construction of certain speaker systems, Cumbest testified:
 I designed and read over 15 articles on midfrequency sound and quadrosonic sound and what would produce the best and I ordered the speakers and built the cabinets to match the speakers. I cut each piece of wood. They are covered with rosewood type material and made specially to place in each corner for quadraphonic sound.
In other testimony he pointed out that even those items which are still available are of the type which require special order purchases and that in obtaining them originally there were six months to two years waiting periods. As to sentimental value, Cumbest testified:
 As far as the snetimental [sic] value of the equipment, it is very great, blood sweat and tears have gone into it, I spent 15 years acquiring it piece by piece and I would never seel [sic] it at any price
Defendant put on no witnesses to contradict Cumbest's testimony.
As the chancellor recited in his order, the general rule is that, ordinarily, specific performance will not be decreed if the subject matter of the contract sought to be enforced is personalty. However, this general principle is subject to several well recognized exceptions, such as: (1) Where there is no adequate remedy at law; (2) Where the specific articles or property are of peculiar, sentimental or unique value; and (3) Where due to scarcity the chattel is not readily obtainable. 81 C.J.S. Specific Performance §§ 81-83 (1977). These exceptions are partly founded on the principle of the inadequacy of a remedy at law and the remedy may, in a proper case, be allowed *Page 297 
where damages are not readily ascertainable.
"The tests to determine whether or not specific performance of a contract should be granted are the same in case of contracts for the sale of personalty as in the case of contracts for the sale of realty, namely, whether the damages for the breach are the equivalent of the promised performance, and whether the remedy at law is inadequate." 81 C.J.S. Specific Performance § 80 (1977). Such equitable relief is justified by the fact that the legal remedy of replevin is subject to defects of procedure which prevent the successful plaintiff from invariably recovering possession of the chattel. There is also considerable authority, old and new, showing liberality in the granting of an equitable remedy. 11 Williston Contracts § 1419 (3d ed. 1968); Miss. Code Ann. § 75-2-716 (1972).
In the present case, there was uncontradicted testimony that some components of the system were irreplaceable. Other components were replaceable but only with difficulty and long waiting periods. Additionally, Cumbest testified that the system was acquired over a fifteen-year span and that he personally designed and built parts of it specifically to match that particular system. Based on that testimony, we must conclude the property had both a unique value and falls into the category of property which is not readily obtainable due to scarcity.
For the above reasons, we hold that the chancellor erred in not finding that the property was sufficiently unique to justify the equitable jurisdiction of a chancery court. The cause will be remanded for a hearing on the merits.
REVERSED AND REMANDED FOR A HEARING ON THE MERITS.
PATTERSON, C.J., SMITH and ROBERTSON, P. JJ., and BROOM, LEE, BOWLING and COFER, JJ., concur.
SUGG, J., took no part.